# FILED

JUL 2 8 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) |
|  | ) Criminal Action No. 02-315 (RBW) |
| v. | ) Civil Action No. 07-1506 (RBW) |
|  | ) |
| GEORGE BRISBANE, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## MEMORANDUM OPINION

This matter comes before the Court upon the pro se Petition to Vacate Defendant's Conviction Pursuant to 28 U.S.C. § 2255, and Memorandum and Points of Authorities in Support Thereof ("Def.'s Mem."). The defendant, George Brisbane, alleges that his conviction and sentence for the sale of cocaine were obtained in violation of his Sixth Amendment right to effective representation, and in violation of the Double Jeopardy Clause of the Fifth Amendment. Also before the Court is the defendant's Motion to Alter or Amend Judgment/Order of 2/19/08, pursuant to Federal Rule of Civil Procedure 59(e) ("Def.'s Rule 59(e) Mot."). The petitioner seeks an evidentiary hearing, a new trial, or immediate release. These motions are opposed by the government, see United States' Opposition to Petition to Vacate Defendant's Conviction Pursuant to 28 U.S.C. § 2255 ("Gov't's Opp'n"). For the reasons that follow, this Court will deny in part the defendant's motions, and order an evidentiary hearing solely to address the defendant's claim that his trial counsel was ineffective for failing to investigate and present an entrapment defense.

1

# I. Factual and Procedural Background

On January 28, 2003, the defendant was found guilty by a jury of distributing five grams or more of " cocaine base," in violation of 21 U.S.C. § 841(b)(1)(B)(iii) (2006). Although the government had indicted the defendant for the sale of "cocaine base, also known as crack," this Court determined, in response to a mid-trial Motion for Judgment of Acquittal by the defendant's trial counsel James L. Lyons, that the government had only introduced evidence sufficient to prove the sale of cocaine base. 1/23/03 Tr. 155-56. However, because this Court ruled that § 841 merely required the government to prove the substance in question was cocaine base, it allowed that question to go before the jury.[1] Id. This Court then sentenced the defendant to 360 months in prison and 8 years supervised release, based on the amount of cocaine base in question and the defendant's status as a Career Offender.

On appeal to the District of Columbia Circuit, the defendant, now represented by Law Professor Adam H. Kurland, raised the following four claims: (1) the evidence was insufficient to support a finding that the substance at issue was cocaine base within the meaning of Section 841(b)(1)(B)(iii); (2) under Apprendi v. New Jersey, 530 U.S. 466 (2000), the use of the defendant's prior narcotics conviction to enhance his statutory sentence under § 841 should have been alleged in the indictment and proven beyond a reasonable doubt to the jury; (3) the Court abused its discretion in dismissing two trial jurors; and (4) at sentencing, the Court erroneously considered the defendant's prior conviction for Escape as a crime of violence in concluding that he qualified as a Career Offender. See United States v. Brisbane, 367 F.3d 910, 915 n. 6 (D.C. Cir. 2004). The District of Columbia Circuit unanimously rejected the latter three claims, id. at

---

[1] At trial, the defendant testified that he had never intended that a sale of drugs actually take place. Instead, the defendant claimed that he had brokered the transaction in order to steal the purchaser's money before any drugs changed hands. Def.'s Mot. at 9.

915 n.6, but ruled that because the government had failed to prove that the substance the defendant was convicted of distributing "was smokable [or] that it was crack," the conviction under § 841 could not stand. Id. at 914. The unanimous panel went on to hold on "the issue of remedy" that

> [d]istribution of "cocaine" is a lesser included offense of distribution of "cocaine base." The elements of the latter offense include all the elements of the former, plus proof that the type of cocaine is "cocaine base" within the meaning of subsection (iii). See Kelly v. United States, 370 F.2d 227, 228 (D.C. Cir. 1966). There is no doubt that the government's evidence sufficiently supported Brisbane's conviction for distributing "cocaine," although the evidence did not support his conviction for distributing "cocaine base" as that term may be understood under either of the options discussed above.

Id. at 914-15. Hence, the defendant's conviction was vacated and remanded "with instructions to enter a judgment of conviction for 'cocaine' and to sentence accordingly." Id. at 915. On May 25, 2005, this Court entered a judgment of conviction against the defendant for distribution of cocaine, and the defendant, now represented by Cary Clennon, was re-sentenced to 327 months imprisonment and five years supervised release.

The defendant again appealed. Through Gregory B. English, now his fourth lawyer, the defendant argued (1) that distribution of cocaine hydrochloride is not a lesser included offense of the distribution of cocaine base, and (2) that the defendant's prior convictions were elements of the offense and thus were required to be charged in the indictment and proven beyond a reasonable doubt to the jury. The defendant's conviction was summarily affirmed on March 7, 2006. U.S. v. Brisbane, No. 05-3098, at 1 (D.C. Cir. Mar. 7, 2006) (unpublished). The defendant twice filed in the Supreme Court petitions for certiorari – first through appellate counsel Kurland, then through appellate counsel English – but each petition was denied. See Brisbane v. U.S., 543 U.S. 938 (2004); Brisbane v. U.S., 549 U.S. 943 (2006).

3

The defendant, now proceeding pro se, filed this timely motion under 28 U.S.C. § 2255 on September 1, 2007. After failing to respond to or acknowledge the defendant's motion as ordered by the Court on November 27, 2007, November 27, 2007 Order at 1, the Court ordered the government to file a response on or before February 1, 2008, or risk the entry of a judgment for the defendant, January 15, 2008 Order to Show Cause at 1. Although the deadline for the government's response had not yet come to pass, the defendant filed a motion on January 28, 2008, requesting that the Court, inter alia, enter judgment in his favor of due to the government's failure to file its response in a timely fashion. Petitioner's []Motion to Compel[] Judgment in Demand[] Pursuant to Section []2255 Proceedings Rules 4(b), and 5(a)-(d) at 2. Meanwhile, the Court "learned that the attorney listed as counsel of record on behalf of the United States [was] no longer employed by the Office of the United States Attorney," February 19, 2008 Order at 1, and because the United States [had] not received either of the Court's prior orders," id. at 1-2, the Court vacated the January 15, 2008 Order and directed the government to file a memorandum in opposition to the defendant's Section 2255 motion on or before March 31, 2008, id. at 2.

The defendant continued to press on, however, and on February 21, 2008, he moved for summary judgment, arguing once again that he is entitled to judgment in his favor because of the government's failure to timely file a response to his Section 2255 motion. Motion for Summary Judgment for Failure of Respondent to Oppose Petitioner's Timely 2255 (2000) Motion to Vacate Unconstitutional Conviction and Sentence at 1. Given that the Court had already ordered the government to file its opposition memorandum by March 31, 2008, the Court denied both the defendant's motion to compel judgment, as well as his motion for summary judgment. February 27, 2008 Order at 2.

In response to the Court's latest order, the defendant filed yet another motion on February 29, 2008, this time asking the Court to vacate, alter, or amend its February 19, 2008 Order and to reinstate its January 15, 2008 Order. Def.'s Rule 59(e) Mot. at 1. Furthermore, the defendant requests that the Court enter judgment in his favor based on the government's delayed response, or alternatively to proceed without allowing the government to file any responsive pleadings. Def.'s Rule 59(e) Mot. at 9; see also Defendant's Motion for Summary Judgment, and Reply to Respond[e]nts Opposition to Petitioner's 28 U.S.C. § 2255 [Motion] to Vacate Unconstitutional Conviction and Sentence ("Def.'s Reply") at 4. Each of these motions will be addressed below.

## II. Analysis

### A. Defendant's Motion to Alter or Amend The Court's Order of February 19, 2008 and to Reinstate the Court's January 17, 2008 Order Pursuant to Federal Rule of Civil Procedure 59(e)

Pursuant to Federal Rule of Civil Procedure 59(e), the defendant requests that the Court vacate its Order of February 19, 2008, and enter judgment for him based on the government's delayed response, or alternatively to proceed without allowing the government to file any responsive pleadings. Def.'s Reply at 3. Rule 59(e) "makes clear that [a] district court possesses the power asserted in [a] case [in which such a motion is filed] to alter or amend a judgment after its entry." Advisory Committee Notes. A Rule 59(e) motion "'is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

The defendant argues that the government, by failing to respond to his motion by February 1, 2008, "has defaulted," and that its excuse (the attorney of recording having retired) is

"totally inexcusable." Def.'s Reply at 2. The defendant cites <u>Santobello v. New York</u>, 404 U.S. 257, 263 (1970) (Douglas, J., concurring) for the proposition that

> [t]he staff of the prosecution is a unit and each member must be presumed to know the commitments made by any other member. If responsibility could be evaded that way, the prosecution would have designed another deceptive 'contrivance,' akin to those we condemned in <u>Mooney v. Holohan</u>, 294 U.S. 103 [(1935)], and <u>Napue v. Illinois</u>, 360 U.S. 264 [(1959)].

Def.'s Reply at 2. The defendant also cites <u>Ruiz v. Cady</u>, 507 F. Supp. 50, 51 (E.D. Wis. 1981), where the district court entered a default judgment in favor of the petitioner on a habeas corpus petition because of "[t]he attorney general's practice of routinely delaying habeas corpus proceedings [was deemed] particularly reprehensible in light of the fundamental purpose of [the writ of habeas corpus.]"

These cases are inapposite. In <u>Santobello</u>, a promise made during a plea agreement negotiation was breached at the defendant's sentencing hearing by "another prosecutor [who] had replaced the prosecutor who had negotiated the plea." 404 U.S. at 259. The Supreme Court remanded the case to the district court for further proceedings because "a constant factor [of plea agreements] is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Id.</u> at 261. In <u>Mooney</u>, the State prosecutor had obtained the defendant's conviction in violation of the Due Process Clause through the "deliberate deception of [the] court and jury by [the] presentation of testimony known to be perjured." 294 U.S. at 112. <u>Napue</u>, too, involved the knowing introduction by a prosecutor of perjured testimony by a key prosecution witness. 360 U.S. at 267. Here, the delay caused by the unfortunate inadvertence of the United States Attorney's Office did not result in the unconstitutional conviction of the defendant, nor was the defendant induced into bargaining away his freedom for a promise that was thereafter

broken by the government. The circumstances here simply do not rise to the level of the "contrivances" at issue in Santobello, Mooney or Napue.

Moreover, even if the inadvertent failure to file a timely response by the government could be said to be indicative of a "[general] practice of routinely delaying habeas corpus proceedings," Ruiz, 507 F. Supp. at 51, the Court would still refuse to grant the defendant's motion based on such a transgression. In Ruiz, the district court's entry of a default judgment in favor of the petitioner was promptly reversed by the Seventh Circuit. Ruiz v. Cady, 660 F.2d 337, 338 (7th Cir. 1981). The circuit court noted that "[w]here the respondent is guilty of long and inadequately explained delays, it may be presumed that the petitioner is being illegally confined[;] . . . [however,] a relatively short delay, certainly of some consequence if the petitioner has been wrongly confined, does not, in our opinion, rise to the level of a due process violation." Id. at 340, 341. Similarly, no due process violation was occasioned here by the government's delay. Indeed, the purpose of Rule 59(e) is to prevent manifest injustice and it is difficult to see how a relatively short, although inexcusable, delay should be the basis for imposing significant costs on the general public by vacating a criminal conviction. Although the Court sympathizes with the defendant's position, and does not in any way condone the regrettable actions of the government, the Court is satisfied that the interests of justice and the purpose of Rule 59(e) support its decision to deny the defendant's motions to vacate, amend, or alter its February 19, 2008 Order and for summary judgment.

**B. The Defendant's Motion to Vacate His Conviction Pursuant to 28 U.S.C. § 2255**

The defendant's current substantive challenge to his conviction and sentence is made pursuant to 28 U.S.C. § 2255, which permits a prisoner under sentence of a federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence[,]" on

the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Under § 2255, the reviewing court, if it

> finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Id.

Here, broadly, the defendant's collateral attack is premised on three theories: (1) ineffective assistance of counsel; (2) the Double Jeopardy Clause; and (3) the bias of this Court. More precisely, the defendant alleges first that each of his four lawyers were constitutionally ineffective under Strickland v. Washington, 466 U.S. 668 (1984). He claims that trial counsel James L. Lyons (1) failed to investigate and request a jury instruction regarding an entrapment defense "as first requested and instructed" by the defendant, (2) put on an "unwarranted and unnecessary defense" instead of simply resting after the government presented its case, and (3) failed to raise a Double Jeopardy defense when the Court permitted the case to go to the jury despite the Court's ruling that the Government had not proved that the substance in question was crack cocaine. Def.'s Mem. at 4. He claims that appellate counsel Adam H. Kurland (1) failed to raise the Double Jeopardy claim, (2) did not challenge the reasonableness of the defendant's sentence, (3) did not challenge the use of his prior conviction as a basis for classifying him as a Career Offender, (4) did not request a rehearing en banc in order to challenge purported errors in the District of Columbia Circuit's opinion, and (5) failed to argue that trial counsel Lyons was ineffective. Id. at 4-5. As to re-sentencing counsel Cary Clennon, the defendant alleges

constitutionally ineffective assistance for his (1) failure to raise the errors purportedly made by trial and appellate counsel, (2) failure to raise the Double Jeopardy claim, and (3) failure to challenge use of the defendant's prior conviction for possession of cocaine with intent to distribute as a basis for classifying him as a Career Offender. Id. at 5. Finally, the defendant alleges that appellate counsel Gregory B. English (1) failed to challenge the reasonableness of defendant's sentence, (2) did not adequately consult with the defendant, and (3) failed to raise the Double Jeopardy claim. Id. at 5-6. The defendant also claims that his conviction was obtained in violation of the Double Jeopardy Clause and that this Court was biased against him. Id. at 20-21, 35-36.

### 1. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance by his counsel and prejudice to him because of that deficient performance. United States v. Williams, 488 F.3d 1004, 1010 (D.C. Cir. 2007) (citing Strickland, 466 U.S. at 687). Counsel's performance is deficient only where he "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. In other words, counsel must provide only "reasonably effective assistance." Id.; see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy . . . ."). When entertaining claims of ineffective assistance of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Prejudice occurs if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694. A "reasonable probability is a probability sufficient to

undermine confidence in the outcome." Id. At bottom, the defendant faces a heavy burden in his

effort to establish that any of his lawyers were ineffective. And, while the defendant may seek

an evidentiary hearing to develop his claims, a court need not hold one where "the motions and

the files and the records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b).

### a. Defendant's Contention that His Attorneys Were Ineffective for Not Raising a Double Jeopardy Claim, and that his Conviction itself was Obtained in Violation of the Double Jeopardy Clause.

The defendant charges that all four of his attorneys were constitutionally ineffective for

failing to argue that his conviction violated the Double Jeopardy Clause. The defendant argues

that "once this [C]ourt acquitted him of [distribution of] crack cocaine[,] [t]hen legally that was

the end of the government's case." Def.'s Reply at 7. Essentially, the defendant argues that the

Court's mid-trial ruling on the sufficiency of the government's evidence was a complete

judgment of acquittal, and that it was a Double Jeopardy Clause violation to send the question of

whether the defendant had distributed "cocaine base" to the jury. Id.

The government responds that "[h]ere, [the] defendant was convicted in a single trial,

was not tried for the same offense in a second trial after acquittal or conviction of the same

conduct in an earlier trial, and was not given multiple punishments for the same crime." Gov't's

Opp'n at 10. Thus, the Government argues that his attorneys were not ineffective because this

claim lacks merit as a matter of law. Id. (citing United States v. Brown, 449 F.3d 154, 159 (D.C.

Cir. 2006) ("Failure to raise a meritless claim is not evidence of ineffective assistance.")).

Although the government's response is cursory and rests upon the overly simplistic view that the

Double Jeopardy Clause only applies to successive prosecutions in separate trials, it is correct that the defendant's claim is meritless as a matter of law.

The Double Jeopardy Clause "'protects against a second prosecution for the same offense after acquittal[, and] protects against a second prosecution for the same offense after conviction.'" United States v. Ginyard, 511 F.3d 203, 207 (D.C. Cir. 2008) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)). Contrary to the government's claims, the Double Jeopardy Clause applies to midtrial judgments of acquittal as well, at least where that acquittal was "facially unqualified." Smith v. Massachusetts, 543 U.S. 462, 473. In Smith, the trial court granted the defendant's mid-trial motion for acquittal based on insufficiency of the government's evidence, as the State had failed to introduce evidence regarding the barrel length of the gun the defendant was charged with illegally possessing. Id. at 465. Nothing in the record indicated that this judgment was not final or open to reconsideration. Id. at 471-72. After the defense presented its case concerning the remaining two charges, the prosecution alerted the judge to precedent holding that the victim's previous testimony might be sufficient to establish the unlawful firearm possession count. Id. at 465. The judge agreed and "announc[ed] orally that she was 'reversing' her previous ruling and allowing the firearm-possession count to go to the jury." Id. This procedure was held to violate the Double Jeopardy Clause, lest its guarantee "be allowed to become a potential snare for those who reasonably rely upon it." Id. at 473. Thus, the Government is incorrect that the Double Jeopardy Clause is not implicated where only a single trial has taken place. See Gov't's Opp'n at 10.

The defendant's reliance on Smith is misplaced, however. This Court's mid-trial ruling on the sufficiency of the government's evidence was only a "partial judgment of acquittal." Brisbane, 367 F.3d at 912. That is, this Court ruled that while the government had failed to

prove that the substance was crack cocaine, which is not defined in Section 841, the government had offered sufficient evidence to support a guilty verdict for distribution of "cocaine base," rejecting the defendant's argument that "cocaine base" as used in Section 841 was intended to sanction crack cocaine only. See 1/23/03 Tr. 155-56 ("It would be my view that the language [in the indictment], 'crack cocaine,' is really superfluous and really has no bearing on the issue of what the government has to prove in order to establish the offense of the distribution of cocaine base. . . . So I will deny the Motion for Judgment of Acquittal to the extent that it is asking that the second count of the indictment be dismissed in its entirety."). Thus, this Court never acquitted the defendant of either distribution of "cocaine base" or of Section 841(b)(1)(B)(iii) more generally. Although the District of Columbia Circuit held (contrary to the holdings of a number of other circuit courts)[2] that Section 841(b)(1)(B)(iii) deals with crack cocaine only, it employed its authority under 28 U.S.C. § 2106 to "'modify a criminal judgment to reduce the conviction to that of a lesser included offense, where the evidence fails to support one element of the crime of which appellant was charged and convicted but sufficiently sustains all the elements of the included offense.'" Brisbane, 367 F.3d at 915 (quoting Austin v. United States, 382 F.2d 129, 142 (D.C. Cir. 1967)). Thus, the Double Jeopardy Clause was not violated by the defendant's conviction, and the defendant's lawyers cannot be considered deficient for failing to raise a double jeopardy objection.

---

[2] See United States v. Barbosa, 271 F.3d 438, 461-67 (3d Cir. 2001); United States v. Butler, 988 F.2d 537, 542-43 (5th Cir. 1993); United States v. Jackson, 968 F.2d 158, 161-63 (2d Cir. 1992); United States v. Easter, 981 F.2d 1549, 1558 (10th Cir. 1992).

**b. Defendant's remaining claims against trial counsel Lyons.**

The defendant further contends that trial counsel Lyons was constitutionally ineffective for failing to investigate and present an entrapment defense,[3] and, alternatively, for presenting a defense which permitted the government to fill the gaps in its case-in-chief. Def.'s Mem. at 11-12, 17; see also Def.'s Mem. at 15 (stating that the "existing fact's [sic.] were readily available to raise the entrapment defense that was suggested and instructed to defense counsel to pursue. But for whatever reason, defense counsel incompetently abandoned the issue [before trial]").[4] The government responds with a number of arguments. First, it claims that "[t]he record in this case conclusively established that this defense was not available to [the] defendant because he did not admit to committing the crime[,]" but instead testified that he lacked the requisite intent to distribute cocaine base. Gov't's Opp'n at 11. Further, the government argues that the record also demonstrates that the defendant cannot show prejudice, because he could not have proven inducement to committing the crime and would have been found predisposed to distribute cocaine because of his prior criminal history. Id. at 13.

It is impossible for the Court to hold that the existing record conclusively establishes that Lyons's trial preparation was constitutionally sound. "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Kimmelman v. Morrison, 477 U.S. 365, 384 (1987) (citation omitted). To fulfill this constitutional mandate, "counsel must conduct some investigation into the prosecution's case and into various defense strategies." Id. at 384-385 (finding counsel's reasons for conducting no

---

[3] After the submission of the case to the jury, the jury submitted a question to this Court regarding whether it could consider entrapment. The Court instructed the jury not to consider entrapment, as the defense had not been raised.

[4] The Court construes this argument as encompassing both a claim that the evidence at trial was sufficient to merit a jury instruction on the entrapment defense and a claim of deficient investigation leading to a failure to present the defense.

discovery constitutionally infirm, because they were based not on any reasoned professional judgment but on his misunderstanding of the law); see also Strickland, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Of course, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

Correspondence between the defendant and Lyons might or might not reflect a misunderstanding of the right to present conflicting defenses. In an e-mail to the defendant, Lyons states his reasons for declining to present an entrapment defense:

> As you will recall, we discussed the entrapment defense on several occasions. Entrapment is a defense where a defendant says "yes, I did the crime charged, but I didn't want to and I was pressured into it by the government's actions." In our case, your position was that YOU DID NOT COMMIT THE OFFENSE CHARGED (distribution and possession with intent to distribute). You [sic.] purpose was not to actually sell any drugs, but to flim flam the prospective buyer and get the money and run. Your position was simply not consistent with entrapment. Your defense was I am not guilty because I did not intend to commit the crime charged.

Gov't's Opp'n, Ex. 3 (E-mail Correspondence Between George Brisbane and James Lyons, February 6, 2007) ("Lyons E-mail") (emphasis added and capitalization in original) at 1. To the extent that Lyons was suggesting that it would be imprudent to pursue an entrapment defense because such a defense was "simply not consistent with entrapment," thereby potentially affecting the credibility of the defendant, then it would appear to the Court that Lyon's strategic assessment is a reasonable one that would be entitled to "a heavy measure of deference." Strickland, 466 U.S. at 691. On the other hand, if Lyons was suggesting that the defendant's refusal to admit to the commission of the crime precluded him from relying on the entrapment

defense at trial,[5] such an assessment of the legal ability to present the defense would have been incorrect. When prosecuted for a federal crime, a defendant need not admit that he committed the crime as a prerequisite to presenting an entrapment defense. See Mathews v. United States, 485 U.S. 58, 59-60 (1988) (holding that "a defendant in a federal criminal prosecution who denies commission of the crime may nonetheless have the jury instructed, where the evidence warrants, on the affirmative defense of entrapment"); United States v. Glover, 153 F.3d 749, 754 (D.C. Cir. 1998) (discussing the district court's denial of an entrapment instruction, noting that the defendant "wanted an instruction that even if the jury found he did intend to distribute crack (rather than soap), it should still acquit if it found the government had wrongfully induced him. Assuming there were sufficient evidence of entrapment, [the defendant] was entitled to such an instruction"). Lyons did interview Corbin Patterson, the government's "special employee" who allegedly induced the defendant to broker the drug transaction, and informed the defendant that "[Patterson] 'had nothing to say.'" Def.'s Mem. at 12. However, if this interview and other related pre-trial investigation and trial-development decisions (such as not attempting to call Patterson to the stand as an adverse witness, and not to develop testimony concerning the pressure allegedly placed on the defendant by Patterson) were framed by trial counsel's misunderstanding of federal entrapment law, the Court cannot say at this juncture – the government having submitted no supporting affidavits from the defendant's counsel – that those decisions were reasonable strategic decisions within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; see, e.g., Williams v. Taylor, 529 U.S. 362, 395 (2000) (noting that a decision based on a legal misunderstanding was not animated by "strategic

---

[5] Indeed, the government asserts this very point in its opposition memorandum, stating that "[t]he record in this case conclusively establishes that this defense was not available to defendant because he did not admit to committing the crime." Gov't's Opp'n at 11-12. The government cites no authority for this proposition, instead relying only upon the e-mail from Lyons quoted above. Id.

15

calculation"); Bullock v. Carver, 297 F.3d 1036, 1049 (10th Cir. 2002) (citations omitted) ("An attorney's demonstrated ignorance of law directly relevant to a decision will eliminate Strickland's presumption that the decision was objectively reasonable because it might have been made for strategic purposes, and it will often prevent the government from claiming that the attorney made an adequately informed strategic choice.").

Even if counsel's performance was deficient, the defendant must still show prejudice in order to be granted relief. See Strickland, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). An entrapment defense consists of two components: "'government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.'" United States v. Hanson, 339 F.3d 983, 988 (D.C. Cir. 2003) (quoting Mathews v. United States, 485 U.S. at 63). The defendant bears the burden of showing government inducement; if he makes this showing, the burden shifts to the government to establish that the defendant was predisposed to commit the charged crime. Hanson, 339 F.3d at 988. Although "[b]oth inducement and predisposition are normally matters for the jury, . . . a defendant only is entitled to an entrapment instruction when there is sufficient evidence from which a reasonable jury could find entrapment." Glover,153 F.3d at 754 (quotation marks and citations omitted).

"When a government informant buys drugs from a defendant, the defendant can show inducement by pointing to 'evidence of reluctance' to sell the drugs or the informant's use of 'persuasive overtures,' beyond those 'ordinarily present in a drug transaction.'" United States v. Law, 528 F.3d 888, 905 (D.C. Cir. 2008) (quoting Glover, 153 F.3d at 754); see also United

States v. Sanchez, 88 F.3d 1243, 1249 (D.C. Cir. 1996) (noting that inducement includes "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy . . . . A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement"). The same is true when the informant allegedly induces a defendant to sell drugs to an undercover officer. Once a defendant shows the government induced him to break the law, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by [g]overnment agents." Jacobson v. United States, 503 U.S. 540, 549 (1992). In other words, the government must prove that any "predisposition was independent and not the product of the attention that the [g]overnment had directed at" the defendant. Id. at 550 (holding that no predisposition could be shown because "[b]y the time petitioner finally placed his order [for child pornography], he had already been the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations").

In a case such as this one, where a defendant claims that his attorney was ineffective for failing to raise an entrapment defense, "the necessary corollary of Mathews is that the version of the facts [the Court] must take as true for purposes of analyzing the validity of [a defendant's] entrapment defense is the one that supports that defense . . . , and not his alternative claim of innocence" adduced at trial, because "[o]therwise, there would be no evidence of inducement, and no crime into which the defendant had been induced. And that would effectively deprive the defendant of his right, under Mathews, to assert inconsistent defenses." Glover, 153 F.3d at 753. Thus, while there is certainly evidence in the record that would appear to prevent the defendant from relying on an entrapment defense, see, e.g., Def.'s Mem. at 14 (testifying that it was he, rather than the government, who "set up the deal in order to [allow him to] steal the informant's

money), there are certain potential lines of inquiry regarding inducement that, although undeveloped, give the Court pause, and which should be the focus of an evidentiary hearing (in addition to determining whether Lyons's investigation was deficient). For example, it is undisputed that the government's "special employee," Patterson, repeatedly contacted the defendant over a period of seven months in an attempt to purchase drugs. The defendant alleges that Patterson was aware of the defendant's "plight of being financially pressed," id. at 13, that he shared a bond with Patterson based on their shared religious beliefs, 1/23/03 Tr. 72, and that the defendant "was interested in getting hired by [Patterson's] company as an apprentice," 5/13/03 Tr. 41. Although the precise persuasive tactics used are not detailed, the defendant claims that he rebuffed Patterson's requests multiple times, id. at 41-43, that Patterson was "pressuring me and pressuring me" over a period of seven months "about drugs, which I had no involvement with," id. at 42, and insinuates that Patterson would do anything to get this transaction to occur because it would fulfill Patterson's obligations with the government pursuant to his "special employee" agreement, Def.'s Reply at 9.

Of course, these allegations alone are certainly insufficient to warrant the relief the defendant seeks (a new trial). As the District of Columbia Circuit has made clear,

> [w]hen a convicted defendant seeks to overturn a jury verdict based on inadequate investigation by counsel, courts should insist that the defendant show to the extent possible precisely what information would have been discovered through further investigation. Any other rule would give defendants an incentive to present as little evidence as is necessary to create some doubt, even when disclosure of more facts would make clear that further investigation by trial counsel would not have created a reasonable probability of a different outcome. Although defendants are entitled to the benefit of reasonable doubt at trial, an appellate court should not overturn a conviction simply because the defendant has teasingly suggested that there may be facts out there that his trial counsel could have discovered and that would have helped his case. If any such facts exist, the defendant must identify them.

United States v. Askew, 88. F.3d 1065, 1073 (D.C. Cir. 1996). However, those lines of inquiry identified by the Court above could possibly push the defendant over the threshold necessary to obtain a new trial, and an evidentiary hearing is necessary to provide the defendant with the opportunity to develop these facts. Indeed, district courts facing similar allegations have held evidentiary hearings to determine the reasonableness of trial counsel's decision to forego an entrapment defense and to inquire into the defendant's allegations of entrapment. See Smith v. United States, 522 F. Supp. 2d 233, 238-39 (D.D.C. 2007) (determining after evidentiary hearing that defense counsel's failure to raise entrapment defense in prosecution for drug and weapons offenses was not deficient performance supporting claim of ineffective assistance of counsel under § 2255, where counsel indicated that, in her professional judgment, the facts of the case did not support an entrapment defense, and the government proffered evidence that the defendant flagged down the undercover officer on his own to solicit a drug transaction suggested that the defendant was willing to engage in criminal activity and, in fact, initiated it); see also United States v. Gwyn, 481 F.3d 849, 855 (D.C. Cir. 2007) (affirming district court's judgment, made after evidentiary hearing, that "[b]ecause [defendant] Gwyn failed to identify any evidence or theory of defense helpful to his cause . . . he ha[d] failed to meet []his burden" of showing deficient investigation); Capps v. Sullivan, 921 F.2d 260, 263 (10th Cir. 1990) (affirming district court's grant of a new trial for failure to raise entrapment defense where counsel put the defendant on the stand to admit all allegations of the crime, and failed to raise an entrapment defense where evidence suggested it, instead opting to pursue a jury nullification strategy; noting that district court held an evidentiary hearing where testimony was presented by "the attorney who tried the case, [the] police informant . . . who induced [the petitioner] to participate in the

19

heroin transaction, and [by the petitioner] himself"). Accordingly, the defendant is entitled to an evidentiary hearing based on the record now before the Court.

To be sure, the Court need not hold an evidentiary hearing if the record establishes beyond a reasonable doubt that the defendant was predisposed to committing the crime. The government contends that there was "evidence [at trial] of [the] defendant discussing additional drug transactions," and that the defendant's conviction in 1984 for distribution of $10 worth of cocaine serves as additional evidence of predisposition. Gov't's Opp'n at 13. Unfortunately for the government, these assertions alone are not necessarily sufficient to establish predisposition on the part of the defendant. First, the evidence that the defendant engaged in discussions concerning future drug transactions was contested at trial, compare 1/24/03 Tr. 33 (the defendant testified that after the drugs changed hands between the seller and purchaser, he "really paid no attention to [what they said about future deals] . . . They talked. I paid no attention to it."), with 1/27/03 Tr. 27 (government counsel arguing in closing statement that the defendant "does join in the conversation" about future deals and assents at least implicitly to being a future go-between), and there is no evidence or allegation that the defendant participated in any drug-related activity after the single transaction in question which occurred many years earlier Moreover, the predisposition inquiry focuses on the defendant's predisposition independent of any government inducement; thus, "[t]he government may attempt to prove disposition by introducing evidence of the defendant's actions after a government agent approached him, but under Jacobson [that evidence of] predisposition does not count if it is itself the product of improper government conduct." United States v. Vaughn, 80 F.3d 549, 552 (D.C. Cir. 1996) (quotation marks and citation omitted).

As for the government's reliance on the defendant's prior conviction for distribution of illegal drugs, it certainly is far from clear that the defendant's single prior drug conviction almost twenty years earlier and contested statements about unrealized future transactions are sufficient to establish predisposition as a matter of law. Indeed, the defendant alleges in his briefs and presented testimony at sentencing that notwithstanding that prior conviction, prior to the seven months of alleged pressure placed on him by the government's "special employee," he had reformed himself, and thus was not predisposed to distributing narcotics. See Def.'s Mem. at 14 (alleging a lack of predisposition); Def.'s Reply at 9 ("Common sense would indicate to any prudent person that a drug dealer does not need 7 months to sell one ounce of drugs."); 5/13/03 Tr. 44 ("[B]asically, I have given up the street life nearly 20 years ago anyway. . . . All I had in mind was just working and trying to be a good father to my kids . . . . I possessed no desires then, nor do I do now, to involve myself in a criminal element, at all. None."). If credited by the jury, this testimony (backed up by evidence of strong, consistent performance by the defendant at his job, see 1/24/03 Tr. 83-87), might be sufficient to rebut the government's case for predisposition. In the words of the District of Columbia Circuit,

> Jacobson allows a jury to consider the possibility that a defendant's disposition to commit a crime changed over time. Sinners may become saints and saints may become sinners. Nothing is necessarily permanent about either state. A person might be disposed to commit a crime one day and not disposed to do so some time later.

Vaughn, 80 F.3d at 552 (citing Sherman v. United States, 356 U.S. 369, 375-376 (1958)). Given the defendant's allegations and the less than overwhelming evidence of predisposition (so far) proffered by the government, the Court cannot say that the record establishes a "reasonable probability" that the defendant was predisposed to distribute cocaine. Strickland, 466 U.S. at 694; compare Vaughn, 80 F.3d at 552 (discussing with approval jury verdict that the defendant

had been entrapped, where he "acknowledged [at trial] that he 'indulged' in the 'sale of cocaine' before or during 1991 but that he was no longer 'into that' in 1992"), with Hanson, 339 F.3d at 989 (holding that the defendant could not show prejudice sufficient to withdraw a guilty plea, "because the government had extremely strong evidence of [defendant's] predisposition to commit the drug deal. During the preceding six years, [the defendant] had been arrested on narcotics charges multiple times and was twice convicted of possession with intent to distribute."). Thus, the Court finds that an evidentiary hearing on the entrapment issue is warranted.

Finally, and starkly contrary to his entrapment claim, the defendant argues that Lyons simply should have rested after the government presented its case and not presented any defense at all, because doing so allowed the government to fill in the gaps of its case-in-chief. Def.'s Mem at 4. This argument merits only brief discussion. Quite aside from the fact that the defendant does not point to any gaps in the government's case that were filled in as a result of the presentation of his defense, the Court had already determined that the government's evidence was sufficient to go to the jury, as the undisputed evidence showed that the defendant had brokered a cocaine transaction, and the defendant himself insisted that he be allowed to present his side of the story to the jury. See Opp'n Ex. 3. Failure to present a defense would surely have led to immediate conviction, thus negating any claim of prejudice; indeed such a strategy, given the circumstances, very likely would have produced a viable claim for ineffective assistance of counsel. Cf. United States ex rel Barnard v. Lane, 819 F.2d 798, 804-805 (7th Cir. 1987) (affirming grant of writ of habeas corpus based on ineffective assistance of counsel, where testimony had already established that defendant had committed the elements of the crime charged, noting that "[t]he spectrum of counsel's legitimate tactical choices does not include

22

abandoning a client's only defense in the hope that a jury's sympathy will cause them to misapply or ignore the law they have sworn to follow").

Thus, the Court determines that the record, briefs, and documents before it conclusively demonstrate that in all regards except the alleged failure to investigate and present an entrapment defense, the representation by trial counsel Lyons was constitutionally sound. Regarding the entrapment issue, the Court will hold an evidentiary hearing to determine (1) trial counsel Lyons's reasons for foregoing an entrapment defense, and (2) whether the defendant's allegations rise to the level of inducement sufficient to present an entrapment defense.

### c. Defendant's claims against appellate counsels Kurland and English regarding their decisions to forego particular sentencing claims on appeal.

The defendant claims that both Kurland and English were constitutionally ineffective for failing to challenge the reasonableness of his sentence on appeal. See Def.'s Mem. at 28, 41. The defendant also claims that Kurland was constitutionally deficient for failing to challenge the use of his prior drug conviction as a basis for classifying him as a career offender. Id. at 4.

The defendant's first claim against Kurland here merits only summary treatment, as there clearly can be no prejudice to the defendant from the decision of Kurland not to challenge the reasonableness of the defendant's sentence on direct appeal. On appeal, Kurland succeeding in having the defendant's conviction and sentence vacated. The District of Columbia Circuit then remanded the case for resentencing under a different (but lesser included) offense. Brisbane, 367 F.3d at 915. Thus, it is highly unlikely that the Circuit would have addressed this claim had it been presented, as the issue was mooted by Kurland's successful representation on a broader issue. Moreover, at the time of the defendant's first sentencing and first direct appeal, the Sentencing Guidelines were mandatory, and any "reasonableness challenge" to a guideline-range sentence (such as that given the defendant) would have been meritless at best, or frivolous at

worst. Thus, there clearly is no "reasonable probability" that the outcome of the defendant's appeal, or the length of the defendant's sentence, "would have been different" had appellate counsel Kurland argued the reasonableness of his sentence on direct appeal. Strickland, 466 U.S. at 694.

Regarding English, the defendant argues that a "reasonableness" challenge to his sentence was viable because it was "truly disparait [sic.] to other sentences received in this same [District of Columbia] Federal Courthouse." Def.'s Reply at 15 (citing United States v. Foster, 02-cr-396, at *7, Sentencing Memorandum of October 25, 2005) (sentencing defendant to 12 years (144 months) in prison for distribution of cocaine base, notwithstanding his career offender status and guideline range of up to 262 months, because "his small-time drug dealing is prompted by addiction and not the pursuit of pure monetary gain. . . . . [He] did not intend to prey upon the community but only to feed his habit"). Further, the defendant argues that this Court's sentence was not appropriate given his particular background and remorse. See Def.'s Mem. at 28-31. The government responds that although English represented the defendant after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), "[g]iven the circumstances of the case and defendant's long criminal history, counsel certainly did not diverge from the wide range of professional assistance . . . in deciding not to challenge the reasonableness of the defendant's within-the-Guidelines sentence on appeal." Gov't's Opp'n at 20 (internal citation and quotation marks omitted).

In challenging the decision of an appellate attorney to forego a particular issue on appeal where others were presented, a defendant fights a particularly difficult battle, as he bears the burden of "showing that a particular nonfrivolous issue was clearly stronger than issues that

counsel did present." Smith v. Robbins, 528 U.S. 259, 288 (2000). In the words of the Supreme

Court:

> In Jones v. Barnes, 463 U.S. 745 (1983), we held that appellate counsel who files
> a merits brief need not (and should not) raise every nonfrivolous claim, but rather
> may select from among them in order to maximize the likelihood of success on
> appeal. Notwithstanding Barnes, it is still possible to bring a Strickland claim
> based on counsel's failure to raise a particular claim, but it is difficult to
> demonstrate that counsel was incompetent. See, e.g., Gray v. Greer, 800 F.2d
> 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly
> stronger than those presented, will the presumption of effective assistance of
> counsel be overcome").

Id. According to one district court, "[c]hallenges on appeal to the reasonableness of a sentence

are the norm ever since [Booker], so it is perhaps somewhat surprising that [defendant's]

appellate counsel did not make the argument." United States v. Redmond, Civil Action No. 09-

2971, 2009 WL 3671153, at *3 (N.D. Ill. Oct. 29, 2009). In any event, English, in consultation

with the defendant, Kurland and Clennon, determined that

> there is no way to attack Judge Walton for abusing his discretion. He imposed a
> sentence within in [sic.] the guidelines so it is presumptively reasonable. . . Your
> sufficiency of the evidence [and § 851 notice] argument[s] [are] good one[s], and
> you do not want to screw [them] up by arguing stuff that is crap.

Def.'s Reply, Exhibit 2, Correspondence Between Defendant George Brisbane and Appellate

Counsel Gregory English, September 22, 2005 and October 28, 2005 ("Ex. 2"); see also United

States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006) ("[A] sentence within a properly

calculated Guidelines range is entitled to a rebuttable presumption of reasonableness."). There is

no contention that this Court miscalculated the Guideline range appropriate for the defendant,

given his Career Offender status.[6] And, given the defendant's long criminal history, which

---

[6] The defendant does argue that he was improperly categorized as a Career Offender because "under 28 U.S.C. §
994(1)(5), the framers of the U.S. Senetncing [sic.] Guidelines did not intent [sic.] for a local/state $-10.00 [sic.] sale
of powder cocaine in the amount of one-tenth of a gram to be used as a predicate enhancement for career criminal
designation at U.S.S.G. § 4B1.1[.]" Def.'s Mem at 26. A failure by both appellate counsel Kurland and
resentencing counsel Clennon to challenge this supposedly incorrect categorization, he argues, made their

includes (but is not limited to) past convictions for distribution of cocaine and assault with intent to kill, his continued insistence at resentencing that he had not intended to distribute cocaine in this case, 5/25/05 Tr. 63, and that his participation in the crime was solely for the purpose of monetary gain and not because of any drug addiction, 5/13/02 Tr. 46, English would have had a "very tough row to hoe" in arguing that a within-Guidelines sentence, even at the high end of the advisory range, was unreasonable, Redmond, 2009 WL 3671153, at *3 (finding no prejudice from counsel's failure to challenge reasonableness of sentence post-Booker). Thus, the Court determines that the defendant has not met his burden of showing that a reasonableness challenge was "clearly stronger" than the complex constitutional and sentencing claims that appellate counsel English did pursue. Smith, 528 U.S. at 288. Moreover, even if he had made such a showing, the defendant is unable to show prejudice, that is, a reasonable probability that his sentence would be different had the challenge been made. Strickland, 466 U.S. at 694.

Thus, each of the defendant's claims against Kurland, English, and Clennon, regarding the decisions to forego challenges to the defendant's sentence and the defendant's classification as a Career Offender, are conclusively without merit.

---

representation constitutionally deficient. See Def.'s Mem. at 4, 26-27. This argument fails. Not only did resentencing attorney Clennon (and the defendant himself) actually challenge the propriety of using the defendant's 1984 cocaine distribution conviction as a basis for making him a Career Offender, see 5/25/05 Tr. 35-40, 54-55, but U.S.S.G. § 4B1.1(a) clearly states:

> A defendant is a career criminal offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

This provision plainly applies to the defendant. It is uncontested that the defendant's 1984 conviction for distribution of cocaine was a felony committed after his eighteenth birthday. And given the defendant's 1984 conviction for assault with intent to kill, there simply is no legal basis to challenge the Court's determination that he is a Career Offender. Thus, the defendant's claim in this regard against Kurland and Clennon must fail due to his inability to demonstrate prejudice, and there is no remaining dispute regarding whether the defendant's Guideline range was properly calculated.

**d. The defendant's claim that appellate counsel Kurland was ineffective for failing to request en banc review.**

The defendant claims that Kurland was constitutionally ineffective for failing to file for en banc review "after being instructed to do [so] by" the defendant. Def.'s Mem. at 41. The defendant states that Kurland should have petitioned for en banc review based on the "myriad of constitutional violations" committed by the District of Columbia Circuit panel that decided his direct appeal, allegations that amount to a claim that the circuit court's use of 28 U.S.C. § 2106 to order his conviction for cocaine distribution as a lesser included offense was unconstitutional. See id. This claim is utterly without merit.

First, "[a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered" except to ensure uniformity within the circuit or where "the proceeding involves a question of substantial importance." Fed. R. App. P. 35(a). The defendant has not alleged or even alluded to any intra-circuit split or any circumstances that make his claim worthy of en banc review. Id.; see Def.'s Mem. at 41. Nor does the defendant cite to any authority supporting the proposition that a failure to petition for rehearing en banc is grounds for postconviction relief on the basis of ineffective assistance of counsel. In addition to an inability to show that Kurland was deficient in not seeking en banc review, the defendant cannot demonstrate prejudice, as the claim on which he argues such review should have been sought – that it was improper for the Court of Appeals to instruct this court to enter a judgment of conviction against the defendant for a lesser included offense that was not requested in the indictment or argued to the jury – was presented at resentencing, on appeal from the resentencing, and to the Supreme Court in the form of a second petition for certiorari, and was rejected on each occasion. See 5/25/05 Tr. 7-23; Def.'s Mem. Exhibit C, Reply Brief by Attorney English; Brisbane v. U.S., 549 U.S. 943 (2006). Considering these rejections and the distinct probability (if not absolute certainty) that a rehearing would have

27

been denied, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" had appellate counsel Kurland requested en banc review. Strickland, 466 U.S. at 694.

### e. The Defendant's contentions that Kurland and Clennon were constitutionally ineffective for failing to raise the constitutional ineffectiveness of their predecessors.

The defendant argues that both Kurland and Clennon were constitutionally ineffective for failing to raise the purported constitutional ineffectiveness of lawyers who had handled earlier phases of the defendant's case. This argument is premised on the proposition that Kurland should have raised on direct appeal the constitutional ineffectiveness of Lyons, and Clennon should have raised the ineffectiveness of both Kurland and Lyons during resentencing. See Def's Mem. at 5. These claims are without merit. Even if the Court were to determine that any of the actions of the defendant's dedicated lawyers were constitutionally deficient, the petitioner was not prejudiced by a failure to raise an ineffectiveness claim on direct appeal or during sentencing, because those claims remain open to him on collateral attack, as evidenced by the petition that is the subject of this opinion.

### f. The Defendant's remaining claim that English did not adequately consult with him.

The defendant claims that "[b]ecause appellate counsel Gregory English intentionally failed to consult with [him] prior to preparing his direct appeal, in order to discuss the above [sentencing] issues and facts . . ., he was not functioning as the counsel [required] by the Sixth Amendment." Pet.'s Mot. at 36. The government responds that the defendant's own pleadings belie this claim, pointing to a significant amount of correspondence between English and the defendant, see Def.'s Mem., Exhibit C ("English Correspondence"), and further contends that the defendant cannot show prejudice because the sentencing claims lack legal merit. Gov't's Opp'n

at 20-21. Both the defendant and the government have submitted a great deal of correspondence between the defendant and English that conclusively demonstrates that significant, substantive consultations did take place between them (and between English and the defendant's previous attorneys) before English filed the defendant's appeal. See Pet.'s Mem., Ex. C (English Correspondence) (seven letters to defendant from English discussing substantive bases for appellate review); Def.'s Reply, Ex. 2. Moreover, as discussed above, the defendant cannot show prejudice from English's decision to forego raising the sentencing issues the defendant now claims he wanted raised on appeal. See supra Part II.B.1.b. Thus, this final claim of ineffective assistance of counsel against English also lacks merit.

### 2. The Defendant's Remaining Claim that the Court Was Biased Against Him.

Finally, the defendant argues that the Court was biased against him and failed to properly consider mitigating factors when it resentenced him. Specifically, the defendant baldly states that this Court

> stated [at the defendant's first sentencing] that if it weren't for the mandatory imposition of the guidelines, the court would have sentenced this petitioner nowhere near 30 years. . . . At petitioners [sic.] 2d sentencing hearing on May 25, 2005, this court took a completely different position irrespective of Booker (2005)[,] [a]nd all petitioner's positive post-rehabilitative achievements and accomplishments, albeit, while petitioner had to indure [sic.] severe hardships, while confined[.] This posture by the court was surely indicative to petitioner that the court was not exhibiting an extreme lack of impartiality.

Pet.'s Mem. at 35. The Government responds that that this final claim is procedurally barred. Gov't's Opp'n at 22.

Apart from claims of ineffective assistance of counsel, the procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice. Massaro, 538 U.S. at 504. This rule "respect[s] the law's important interest in the finality of judgments" and conserves

judicial resources. Id. Thus, "[b]ecause [the defendant] did not raise his judicial bias claim on direct appeal, the procedural default rule bars its consideration unless [he] demonstrates cause and prejudice." United States v. Hughes, 514 F.3d 15, 17 (D.C. Cir. 2008). "Cause" for habeas purposes "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). For example, a petitioner may demonstrate "that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable." Id. (citations omitted). Ineffective assistance of counsel is also "cause for procedural default." Id. Here, the defendant neither discusses the procedural default rule, nor offers any grounds by which the Court might find cause for the defendant's failure to present this claim on direct appeal. See Def.'s Mem. at 31-36; Def.'s Reply at 12-16. The Court therefore finds that this claim is procedurally defaulted for failure to show cause.[7] See Hughes, 514 F.3d at 17 (citation omitted) ("Inexplicably, Hughes's opening brief does not acknowledge the existence of the procedural default rule; his reply brief contains no argument whatsoever to show the cause and prejudice requirements have been satisfied for his judicial bias claim; and he offers no colorable reason why the procedural default rule should not apply to this claim. Accordingly, we need not address Hughes's procedurally defaulted judicial bias claim on the merits."); United States v. Spadaro, 675 F. Supp. 2d 36, 38

---

[7] Notwithstanding the defendant's inability to show cause, he likely would be unable to show actual prejudice resulting from the bias of which he claims. To establish "actual prejudice," the defendant must show that the errors at his sentencing "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. United States v. Frady, 456 U.S. 152, 170 (1982). Moreover, "[a] finding of judicial bias must be based on 'an abiding impression left from a reading of the entire record,' not from particular comments or rulings considered in isolation." Id. (citations omitted). A sentence within a properly-calculated Guidelines range, especially considering the nature of the offense for which the defendant was convicted coupled with his criminal record, accompanied by tough but fair words reminding the defendant of the seriousness of his offense and its effects on his family and community, 5/25/05 Tr. 68-69, surely do not rise to the level of judicial bias or actual prejudice.

(dismissing claim as procedurally barred for failure to show cause where the defendant "offers no reason for why he has raised his two competency-related claims for the first time in his habeas petition").

### III. Conclusion

For the foregoing reasons, the Court will hold an evidentiary hearing pursuant to 28 U.S.C. § 2255 on the defendant's entrapment defense claim and the decision by trial counsel Lyons not to pursue that defense. The defendant's remaining claims for post-conviction relief are without legal merit, and thus are denied.[8]

**SO ORDERED** on this 27th day of July, 2010.

_____
REGGIE B. WALTON
United States District Judge

---

[8] The Court is issuing an order contemporaneously with this memorandum opinion (1) denying in part the defendant's petition to vacate his conviction, and (2) directing the parties and James Lyons to appear before the Court for an evidentiary hearing on the merits of the defendant's claim of ineffective assistance of counsel.